BROADWAY ENTERPRISE, INC., D. B. A. BROADWAY GRILL, APPELLANT, *v.* BOARD OF LIQUOR CONTROL, APPELLEE.

[Cite as Broadway Enterprise v. Bd. of Liquor Control, 1 Ohio App. 2d 470.]

(No. 7586—Decided August 11, 1964.)

Messrs. *Topper & Alloway*, for appellant.
Mr. *William B. Saxbe*, attorney general, Mr. *Larry G. Brake* and Mr. *David L. Kessler*, for appellee.

BRYANT, J. The proceeding now before this court on appeal on questions of law was begun before the Board of Liquor Control (now Liquor Control Commission), appellee herein, hereinafter called the "board."

The Department of Liquor Control filed charges before the board against Broadway Enterprise, Inc., doing business as Broadway Grill, 3770 West Broad Street, Columbus, Ohio, the holder of a class D-5 night club liquor permit, appellant herein, hereinafter called "Broadway."

In the citation filed with the board, it was alleged that Broadway violated a provision in the Liquor Control Act, Section 4301.68 of the Revised Code, and also regulation No. 47 of the board. Both the statute and regulation prohibit the refilling in whole or in part of original containers of spirituous liquor with any beverage or substance whatsoever.

Sought to be prohibited by the foregoing, among other things, are "the cutting" of spirituous liquor by the addition of water or other diluents, the use of untaxed bootleg liquor masquerading in bottles labeled as expensive brands, and other practices defrauding the state of taxes, sometimes endangering the public health and working a fraud on the public.

The charge filed by the department against Broadway reads as follows:

"On January 23, 1962, your agent did have, keep and possess, in and upon the permit premises, for resale, spirituous liquor in original containers, which have been refilled, partially refilled or diluted—in violation of the provisions of the Liquor Control Act and the regulations of the Board of Liquor Control."

Section 4301.68, *supra,* reads as follows:

"No person shall sell, offer for sale, or possess intoxicating liquor in any original container which has been diluted, refilled, or partly refilled."

Regulation No. 47 of the board reads as follows:

"No holder of a permit authorizing the sale by the glass, or any agent or employee thereof, shall refill any bottle formerly containing alcoholic beverages.

"No permit holder, by himself, his agent or employee, shall sell or deliver to any patron any brand or variety of alcoholic beverage other than that which has been ordered or requested, without the consent or approval of such patron."

After four continuances, the matter came on for hearing on April 3, 1963, upon a plea of not guilty entered on behalf of Broadway by its counsel. On behalf of the department, testimony was offered of H. C. Prisk, chief chemist of the Department of Liquor Control, and Ralph Rutherford, manager of the wholesale liquor store from which Broadway purchased intoxicating liquors for sale on the permit premises. The department also called Frank Wiefel, president of Broadway, as upon cross-examination.

On behalf of Broadway, there was offered testimony of Wiefel on direct examination and also of Mrs. Lucille Cachio, a barmaid employed at Broadway.

There is but little dispute in the testimony. Prisk testified that on January 23, 1962, he and a liquor control investigator, identified as Mr. Drummond, acting on a complaint entered the Broadway Grill, identified themselves to Mrs. Cachio by displaying their identifications and asked to stem or gauge whiskey exhibited for sale on the back bar of the night club. Mrs. Cachio asked them to wait until she called the owner, which they did. In a short while, Wiefel arrived, was informed of the identity

of the two representatives of the Department of Liquor Control and consented for them to proceed. Prisk described his qualifications in considerable detail and told of a special hydrometer which would determine with great accuracy the percentage of alcohol in any beverage. He also told of the formulae furnished by the distillers and of repeated tests run by him as chief chemist of the department.

Prisk stated that at least one of the bottles on the back bar—Fleischman's—"is way off proof." He testified that, as manufactured, this brand is 90-proof whiskey, but that the bottle on the back bar tested 86 proof, which fact he said would "speak for itself."

In all, 12 fifths of whiskey were taken as suspected of being diluted and a fair appraisal of the testimony of Prisk is that all except department exhibit L were clearly in violation and many of them had the characteristics of P M whiskey, which was department exhibit L.

Store manager Rutherford testified that Broadway, on December 8, 1961, purchased twelve bottles of P M whiskey; on December 15, 1961, purchased twelve bottles of P M whiskey; on December 27, 1961, "24 bottles purchased"; on December 29, 1961, "12 bottles purchased"; and on January 5, 1962, "24 bottles purchased."

On behalf of the permit holder, despite the plea of not guilty, no evidence was offered to dispute a claim of the department that P M whiskey had been used to refill many if not most of the samples taken from the back bar. On the contrary, Wiefel by inference seemed to admit that this did or may have happened, attributing it to a disgruntled employee discharged by him a short time before. Both Wiefel and Mrs. Cachio confirmed the testimony of Prisk that both representatives of the department identified themselves, that a list of items taken for laboratory testing was prepared in the night club at the time and signed by both Prisk and Wiefel with one copy left with Wiefel.

On hearing the evidence, the board took the matter under advisement and on April 10, 1963, handed down a decision finding Broadway guilty as charged and imposing a suspension for a period of 70 days, "said suspension to be served consecutively to the thirty-five days suspension imposed by the board in

case 28234 to wit, beginning at noon May 28, 1963, and ending at noon August 6, 1963.'' The record does not disclose the nature of the charge which resulted in the 35-day suspension referred to in the board's order.

On appeal to the Common Pleas Court of Franklin County, by Broadway, the judgment, order and suspension of the board were affirmed in all respects. The permit holder prior to the hearing before the board made a motion to suppress the evidence, claiming that the 12 bottles were illegally obtained. This was overruled by the board, and on appeal, the court below sustained the position taken by the board in refusing to suppress the evidence.

Among the errors assigned on appeal to this court (assignment 6), it is contended that the action of the court below in affirming the 70-day suspension imposed by the board is ''unlawful, unreasonable, arbitrary and constitutes a gross abuse of discretion.'' With that, we find ourselves unable to agree. We are not concerned here with the exact number of days suspension called for in this case. The record does, however, disclose three prior convictions, including the following:

''June 29, 1952, Sunday sales. Twenty-day suspension. February 11, 1955, sales to minors. Twenty-day suspension. April 13, 1958, Sunday sales. Fourteen-day suspension.''

The question before this court, however, primarily is the lawfulness of the order of the court below in affirming the order of the board imposing a 70-day suspension. From the journal entry incorporating the decision of the court below, we observe that that court found and determined that the order of the board was ''supported by reliable, probative and substantial evidence and is in accordance with law.''

As we understand the law, the power of the court below is limited to the ground set forth in Section 119.12 of the Revised Code, and that court, having found that the evidence met the required test, lacked the authority to modify the penalty. The Supreme Court of Ohio has made this determination in *Henry's Cafe, Inc.*, v. *Board of Liquor Control* (1959), 170 Ohio St. 233, in which the second and third paragraphs of the syllabus read as follows:

''2. On appeal from an order of an agency (as defined in Section 119.01, Revised Code) to the Court of Common Pleas,

the power of the court to modify such order is limited to the ground set forth in Section 119.12, Revised Code, *i. e.*, the absence of a finding that the order is supported by reliable, probative, and substantial evidence.

"3. On such appeal, the Court of Common Pleas has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion."

See, also, the decision of this court in *State Racing Commission* v. *Robertson* (1960), 111 Ohio App. 435, third paragraph of the syllabus. It follows, therefore, that the sixth assignment of error is not well taken and must be overruled.

The second assignment of error reads as follows:

"2. In failing to find that the citation should be dismissed because of the non-compliance by the Department of Liquor Control with the provisions of Regulation 61-A of the rules and regulations promulgated by the Board of Liquor Control."

Board Regulation 61-A reads as follows:

"A. If an investigator of the Enforcement Division of the department witnesses a violation of a provision of the Liquor Control Act or a regulation of the board, the investigator shall upon completion of his investigation identify himself by presentation of his credentials to the permit holder or such permit holder's agent or employee, and notify the permit holder or his agent or employee of the violation in writing on the forms prescribed and provided by the department and approved by the board. The original notice to be left with the permit holder or his agent or employee and copies of such notice shall be forwarded within 48 hours to the central enforcement office, the district enforcement office, and one copy retained by the investigator making such report."

On page 19 of the brief filed on behalf of Broadway, there appears the following statement:

"As previously pointed out in this brief, the inspector of the Department of Liquor Control was on the permit premises on January 23, 1962, at which time he seized certain bottles of whiskey on the permit premises. A notice of violation resulting from that seizure was not served upon the permit holder until March 12, 1962."

It is beyond dispute that the investigator and chief chemist

of the department identified themselves both to the barmaid and later to the president of Broadway. It is also undisputed that the preliminary test of the proof for alcoholic content of the intoxicating liquors on the back bar of Broadway was made in the presence of Wiefel and the barmaid. It is also undisputed that a list was made up in considerable detail fully describing the 12 bottles which were identified as exhibits A through L, which were taken for laboratory tests. While it appears that several weeks elapsed between the time of the visit to Broadway and the notice of violation, we note also that regulation 61-A, *supra,* requires the notice to be served on the permit holder "on completion of his investigation."

It seems clear to us upon reading the record in this case that so far as actual notice is concerned, the permit holder in fact was fully notified at the time of the visit and received the written list of bottles taken for testing at that time. If he did get the violation notice on March 12, 1962, it would appear he had adequate time to make whatever investigation he chose for the matter did not come on for hearing due to the continuances until more than one year later. We do not believe the permit holder was prejudiced, from which it follows, in our opinion, that the second assignment of error must be overruled.

The first assignment of error reads as follows:

"In affirming the action of the Board of Liquor Control in overruling the written and oral motions of the appellant to return certain bottles of whiskey seized from the premises of the appellant by an agent of the Department of Liquor Control without a search warrant, and to suppress the knowledge obtained therefrom as evidence."

It is the contention on behalf of the permit holder that the 12 bottles taken for testing were illegally obtained and that the board erred in overruling the motion to suppress these bottles as evidence and any testimony in connection with them. It was also contended that the court below erred in affirming this action by the board. This contention on behalf of Broadway is given the principal emphasis in the brief filed on behalf of Broadway. It therefore becomes important to determine the circumstances under which possession of the 12 bottles of spirituous liquor identified as exhibits A through L were obtained. It is not contended, nor could it be, that there was any illegal entry for

several reasons, among them, that the place was open for business, and, further, that the property in question was clearly inside the permit premises. There can hardly be any doubt from a reading of the Liquor Control Act (Section 4301.01 *et seq.*, Revised Code), that the state in the issuance of permits and the regulation of their use intended to keep a close check upon their operations, and one of the methods chosen was the right to make an inspection of the entire premises at any time. The reasons for this are well stated in a *Per Curiam* opinion of the Supreme Court of Ohio in *Stouffer Corp.* v. *Board of Liquor Control* (1956), 165 Ohio St. 96, wherein it is stated, at page 99:

"It is obvious that the liquor business, although legal by Ohio law, has in it such dangers that it is entirely subject to the police power of the state and may, in fact, be prohibited. Under Ohio law, providing for local option, a large part territorially of the state prohibits traffic in intoxicating liquors. A license, or a right to such a license, to engage in the liquor business is not an inherent right of a citizen, a contract or a property right. *State, ex rel. Zugravu,* v. *O'Brien,* 130 Ohio St. 23, 196 N. E. 664. It is apparent, therefore, that, fine and expensive as appellant's restaurant may be, it has no inherent or property right to a liquor license since such license is a mere privilege conferred by the state."

It is also clear from the record in this case that the two representatives of the department, acting upon a complaint, sought to test the bottles of spiritous liquor on the back bar, and it is nowhere in dispute that they were given consent so to do by Wiefel, president of Broadway. It is also clear that at least one of the samples tested did not meet the required test, there being a substantial variance in the proof or percentage of alcoholic content.

With reference to the right to inspect the premises of a permit holder, 31 Ohio Jurisprudence 2d 290, Intoxicating Liquors, Section 258, provides in part as follows:

"* * * A liquor permittee's premises are available for inspection without a search warrant, since the law against search without warrants has no application with respect to investigations of the liquor department."

In this connection the Court of Appeals for Franklin County, Ohio, in the case of *State, ex rel. Argonne Post No. 545,*

*American Legion,* v. *Board of Liquor Control* (1953), 131 N. E. 2d 245, at 254, wrote as follows:

"The further prayer of the amended petition is for a writ of mandamus requiring the respondents to return to relator the three slot machines admittedly found on the permit premises but claimed to have been locked in a separate room and not used for gambling purposes. The argument of relator is that such slot machines were unlawfully taken because no search warrant had been obtained. We agree with the statement of the trial judge in his opinion, as follows:

" 'Anyone granted a permit is subject to all the department's regulations which are applicable to him and an inspection of the permit premises without a search warrant is not a violation of any of his constitutional rights. The moment he becomes a permit holder his permit premises are no longer private and the law against search without warrant has no application with respect to investigations of the Liquor Department.' "

We note in this case that the chief chemist for the department, upon completion of the various tests, came to the conclusion that every one of the samples taken, with one exception, gave evidence of having been diluted, the diluent apparently being P M whiskey which, with one or two exceptions, was less expensive than the brands originally contained in the bottles labeled exhibits A through K.

After the department introduced evidence indicating that Broadway had made substantial purchases of P M whiskey during the several weeks prior to the visit by the investigator and chief chemist of the department, Broadway offered testimony that P M was used as a special. It is apparent that the board placed but little credence on this explanation and that the board accepted as true the testimony of the chief chemist that nearly all of the exhibits were in violation as charged in the citation. As the record discloses, there was some substantial and credible evidence on every material issue required to be proven to establish the charges contained in the citation. We do not believe the court below erred in so holding.

On behalf of Broadway, it is contended (Broadway's opening brief, pp. 11-13) that the bottles seized should not have been taken because they contained legal intoxicating liquor which

had not been declared contraband. With this statement, we must disagree for the reason that, under the provisions of Section 4301.68, *supra,* it is a misdemeanor punishable (Section 4301.99) by a fine of from $100 to $1,000 and imprisonment from ten days to six months, or both, to "sell, offer for sale, or possess" intoxicating liquor under the circumstances charged in the citation. Evidence of the type offered here, if believed, is sufficient. See *State* v. *Watson* (1962), 117 Ohio App. 333.

Counsel for Broadway have cited several decisions upon which they place reliance. One of them is the decision of the Supreme Court of Ohio in the case of *Wacksman* v. *Harrell, City Mgr.* (1963), 174 Ohio St. 338. This case was an action for a declaratory judgment to test the validity of certain rules announced by the chief of police of Cincinnati, Ohio, in dealing with allegedly stolen property which had been pawned. We feel that the facts in the *Wacksman case, supra,* are so entirely foreign to the facts in this case that it offers no help here.

Reliance also is placed upon a decision by the Supreme Court of the United States in *Mapp* v. *Ohio* (1961), 367 U. S. 643, reversing *State* v. *Mapp* (1960), 170 Ohio St. 427. Here, again, the facts are materially different. In the *Mapp case, supra,* members of the Cleveland police department broke into a private residence, the home of Mrs. Mapp, and against her orders and wishes, searched the entire residence and found the allegedly illegal pictures during that search. It can hardly be contended that the permit premises of Broadway is a residence or dwelling house. In fact, counsel for Broadway does not question the right of the investigator and chief chemist of the department to visit the bar at the time they did. The *Mapp case, supra,* also involved an indictment for a felony, which further distinguishes it from the case now before the court.

One further case should be mentioned. That is the decision of the Supreme Court of Ohio in *Grieb* v. *Department of Liquor Control* (1950), 153 Ohio St. 77. Again the facts are so different as to render the decision inapplicable to the present case. In the *Grieb case, supra,* the permit had been revoked and for this reason only the Department of Liquor Control sought to confiscate and destroy intoxicating liquor entirely legal in all respects except that the owner's permit had been revoked.

Here, it is the claim of the prosecution that the liquor itself was illegal due to alleged refilling, partially refilling or diluting intoxicating liquor in original containers. The decision in the *Grieb case, supra,* dealt with liquor in all respects entirely legal. The first assignment of error is not well taken and must be overruled.

We have considered the other errors assigned and have concluded that they are without merit and must be overruled. The several errors assigned and each of them must be overruled, the judgment of the court below affirmed and the cause remanded.

*Judgment affirmed.*

DUFFY, P. J., and TROOP, J., concur.