SOLOMON, D. B. A. BROOKSY'S BAR, APPELLANT, *v.* LIQUOR CONTROL COMMISSION, APPELLEE.

[Cite as Solomon v. Liquor Control Comm., 3 Ohio App. 2d 140.]

(No. 7600—Decided September 22, 1964.)

Mr. *Leonard J. Stern,* for appellant.
Mr. *William B. Saxbe,* attorney general, Mr. *David L. Kessler* and Mr. *Larry G. Brake,* for appellee.

Troop, J.  On Monday, August 14, 1961, agents of the Ohio Department of Liquor Control entered the premises of permit holder, Betty Solomon, D. B. A. Brooksy's Bar, and advised her that they were going to confiscate some partial four-fifths bottles of spirituous liquor from the back bar of her establishment for the use of the state chemist, who would analyze them for possible refilling.  This was done and an analysis was made by state chemist Howard Prisk, following which the permittee was advised of the charge made against her.  There seems to have been no specific objection made by the permittee to the removal, sealing, handling, or by counsel as to the method of identifying the liquor and the seven containers removed by the state agents from the permit premises.

Counsel for the permit holder made timely motions to exclude the evidence, taken by the state agents, from the consideration of the commission at the time of the hearing of the violation as charged against the permit holder, Betty Solomon. The charge perferred against the permit holder is as follows:

"On August 14, 1961, you did possess in and upon the per-

mit premises, intoxicating liquor in an original container which had been diluted, refilled, or partially refilled—in violation of the provisions of the Liquor Control Act.''

Hearing was held as scheduled. In addition to certain stipulations placing some facts before the commission, state chemist Howard Prisk testified. His testimony consisted of a comparison of ''proof,'' as shown on the label of the bottles delivered to him, with the ''proof'' as revealed by his own analysis of the contents of the bottles. Only one of the seven bottles contained liquor, which in the opinion of the chemist was satisfactory as shown by his analysis. The other six were deficient in ''proof'' and indicated a practice of refilling in his opinion.

At the close of the hearing, counsel for the permit holder again moved that the evidence and testimony of the chemist be excluded. His motion was overruled and the evidence admitted. At the time of the hearing counsel predicated his motion for the exclusion of the evidence on the ground that it had been illegally obtained.

In a decision issued on June 20, 1963, the commission found the permit holder guilty of the charge brought against her and as a penalty revoked her class D-5 permit. An appeal was taken from the decision of the commission to the Court of Common Pleas of Franklin County, and submitted upon briefs, oral arguments of counsel and the transcript of testimony. The Common Pleas Court held that the rulings of the commission on the motions of the permit holder were correct and that the order revoking the permit was ''sustained by reliable, probative and substantial evidence.'' It is from the judgment of the Court of Common Pleas that this appeal is taken.

Counsel for the appellant, Betty Solomon, sets out six assignments of error upon which he relies. Some of them are interrelated. The brief of counsel is expansive and involves a discussion of many facets of the statutes and case law possibly applicable in the instant case. The one issue to which this review gives attention concerns the right of the agents of the Department of Liquor Control to seize and remove from the premises of the permit holder a certain seven bottles of whiskey and confiscate them for the purpose of developing the prosecution of a charge against the permittee. The permit holder, by motions duly made, requested the return of the property taken and

the suppression of the evidence derived from the taking, which motions were overruled by the commission.

At the outset, let it be made clear that the case of *Mapp* v. *Ohio* (1961), 367 U. S. 643, is of no help to the appellant permit holder in the instant case. That case dealt with a criminal matter and concerned a police officer who forcibly entered a private residence without a warrant and obtained evidence upon which conviction was based.

Constitutional protections against unreasonable searches and seizures accrue to the private citizen. It is emphasized again, and by this time it should be abundantly clear, that the permit holder, by becoming such, subjects himself to the operation of the liquor control statutes as enacted by the Legislature for the regulation of the liquor business. Permission to operate within prescribed limits is conferred on the permittee by the state of Ohio and in securing his permit he elects to accept the statutory limitations imposed and waives some of his constitutional rights that might otherwise be asserted as a private citizen. The right of a state to regulate the liquor business is established by amendment to the federal Constitution and by supporting decisions of the federal courts. We look then to the regulating statutes to determine the rights of the permit holder and likewise to determine the area and limits within which enforcement officials, representing the machinery for control established by the state, may operate. Statutes prescribe what they may or may not do.

This court considered a question similar to the one before us on this appeal and followed the applicable basic rule in the case of *Hurless* v. *Department of Liquor Control* (1955), 73 Ohio Law Abs. 161. Headnote three of that case states accurately the opinion of the court, as follows:

"A permittee under the Ohio Liquor Control Act is not in the status of a private citizen, he secures his permit and conducts his business subject to the provisions of the Liquor Control Act and by securing his permit and electing to operate under the Liquor Control Act he waives the constitutional protection, if any, as to the right to search his premises and seize property, if found to be in violation of the law."

The unconstitutionality of Section 6064-63, General Code (now Section 4301.66, Revised Code), authorizing officers of the

law to make an inspection or search of the premises without a search warrant had been urged in the *Hurless case, supra.* In meeting this argument the court announced the basic rule as quoted. The court, at page 162, made a further noteworthy observation, as follows:

"* * * Independent of Section 6064-63, General Code, upon the testimony of the inspector of the board, he had probable cause to believe that an offense was being committed in the permit premises when he sought entrance thereto and this would have justified a search. * * *"

In the instant case, the charge against the permit holder is based upon Section 4301.68, Revised Code, as follows:

"No person shall sell, offer for sale, or possess intoxicating liquor in any original container which has been diluted, refilled, or partly refilled."

The permittee was charged with the possession of the offending containers. In passing, it may be said that there is nothing ambiguous about the quoted section. It is perfectly clear that the permit holder is not allowed to have bottles containing diluted or refilled liquor on his premises. There are no extenuating circumstances recited or implied in the language of the section. You just simply may not have them.

The Attorney General, for the commission, urges that the department was authorized to make the seizure under Section 4301.10, Revised Code. Powers and duties of the department are set out in the section. In subparagraph (6) particular power is conferred, as follows:

"Inspect, upon demand, the books, accounts, records, memorandums, and place of business of any person subject to Chapters 4301. and 4303. of the Revised Code or the laws relating to the manufacture, importation, transportation, distribution, and sale of beer and intoxicating liquor, and the sale of alcohol * * *"

If the agents of the department had the power to seize and confiscate the seven bottles, and contents, introduced into evidence at the hearing before the commission as exhibits A through G, that power must have come from the foregoing section. No other statute appears to sustain it.

Counsel for the appellant permit holder made two motions before the commission at the time of hearing and later, one to

preclude consideration of the seized liquor as evidence and the other to secure the return of the property seized. Both motions were overruled by the commission.

While somewhat interrelated, the seizure and the confiscation of the liquor used as evidence are in fact two separate concepts. The Legislature must confer authority upon the Department of Liquor Control to do either or both. To repeat, we are not concerned with a possible violation of Betty Solomon's constitutional rights, but we consider only whether or not the agents of the department operated within the authority conferred by statute.

The record of the hearing before the Liquor Control Commission, on June 20, 1963, as certified to the Court of Common Pleas for review, must be the center of interest in this appeal. It should be noted that the record is totally silent as to any reason for the inspection of the permit premises and the taking of the liquor. Unlike the inspector in the *Hurless case, supra,* who testified that he had probable cause to believe an offense was being committed, the agents in the instant case offer no reason or excuse for the exercise of authority. Be that as it may, we simply observe that such an approach suggests the danger inherent in any control system. Regulation without limitation makes it possible for enforcement to become purely arbitrary, even to the point of discrimination motivated by personal differences or even ulterior motives, neither of which has any place in a regulatory procedure even where rigid regulation for the protection of the public interest is required.

In the instant case, the approach of the agents to the situation before them is clear from the record. Particular attention is directed to the stipulations made. The agents identified themselves and "informed Betty Solomon that they were going to confiscate some partial four-fifths bottles of spirituous liquor from the back bar" for analysis by the state chemist. Further, the record says that inspector Duffy "confiscated the following bottles" and, referring to the itemized list of the bottles, the investigator "delivered the confiscated evidence to the Cleveland district office * * *."

Section 4301.10 (6), Revised Code, gives the department's agents the power to "inspect, upon demand" the "place of business" of a permit holder. Assuming that the stock of merchan-

dise carried by the permit holder is a part of the "place of business," and, therefore, subject to inspection upon proper demand, by what process of interpretation, even the most liberal rather than the required strict, can the language of the section be so disfigured as to be made to read *confiscate,* "upon demand," the property of the permit holder, even if the expressed intention is chemical analysis. Such a view could produce a situation where the entire stock of a small operator could be removed at the whim of a director or agent, even at a time when the removal would leave the permit holder with no merchandise to meet his most favorable volume of business. Attention is directed to the opinion issued by this court on August 11, 1964, in the case of *Broadway Enterprise, Inc.,* v. *Board of Liquor Control,* 1 Ohio App. 2d 470, in which an inspection took place on the premises and a taking followed the discovery of an offense.

Can it be said, in fairness and justice, that the permit holder waived any rights she may have had? It is altogether unlikely that there is a permit holder in the state of Ohio unaware of the provisions of Section 4301.66, Revised Code. Acquiescence on the part of the permit holder to the "demand" of an inspector can hardly be regarded as a waiver of any right he might have when he well knows that to "hinder or obstruct any agent" purporting to make an "inspection" of a permit premises raises the ugly head of the possibility of another charge against him. Such a statute makes it virtually impossible for a permit holder to actively resist what he may believe to be, and in fact is, an illegal enforcement act.

Nothing in Section 4301.10 (6), Revised Code, authorizes carrying away anything belonging to the permit holder as a part of the inspection of a place of business. Such a seizure, as in the instant case, has no foundation in the statutes enacted by the Legislature.

In contrast to the language used by the Legislature in Section 4301.10 (6), Revised Code, we find detailed and carefully restricted powers of the department in the taking of beer and intoxicating liquors under other particular circumstances. For example, Section 4301.29, Revised Code, details the method of handling stocks of beer and liquor upon the revocation or cancellation of a permit. The section covers also the duty of the

department when the stocks of a permittee are seized by a lien holder. Section 4301.45, Revised Code, outlines in detail the course to be followed when vehicles are seized in the act of illegally transporting liquor. Included are provisions for the disposition of the property, protection of a lien holder, as well as provision for the posting of a bond to insure the return of the property for trial purposes. So too, in Section 4301.52, Revised Code, we find there specified the methods available to the Tax Commissioner in case of seizures for the enforcement of the laws placing taxes on the various intoxicating liquors and beer.

The Legislature is cognizant of seizure situations and provided for them in several statutes. It cannot well be argued, therefore, that the Legislature was unmindful of the one presented by this appeal. Not only have legislative draftsmen provided for the particular situations noted, but in the drafting of the more recent amended statutes indicate awareness of the limitations imposed upon such enactments by the decision of our Supreme Court in *Grieb* v. *Department of Liquor Control* (1950), 153 Ohio St. 77.

In the instant case, or in any seizure situation, confiscation of any substantial amount of merchandise could result in financial impairment preventing replacement of the stock resulting in effectual revocation of a permit without conforming to statutory revocation requirements. Department's Exhibit A, I. W. Harper Whiskey, 100 proof by the label, tested as being 99.66 proof, which state chemist Prisk says was satisfactory, or not illegal, still remains in the hands of the department—confiscated.

To seize without cause is arbitrary. Even if there could be established a statutory basis for the *seizure,* as within the language used in the statutes, or implied by severe strain on that language, nowhere in the applicable statutes is there one syllable to support the *confiscation* with which we are confronted in the instant case.

Counsel for the permit holder and the Attorney General for the commission have presented lengthy and well-developed briefs. Not all assignments of error, or arguments, are discussed in this opinion. Only the crucial point and its incidental facets have been emphasized. No mention is made in the briefs, or in the record of proceedings anywhere, of the attachment to

the record of the hearing of photocopies of previous orders of the commission relative to the permit premises. They reflect seven charges against the permit premises, although others than Betty Solomon are named as permit holders, over a period from 1953 to 1958. Three of the seven charges were dismissed and four were found to be valid and penalties were imposed.

Such a supplemental record has no place in an appeal before this court and certainly could not be considered by the Common Pleas Court. The only record a reviewing court may notice concerns the hearing of the particular charge involved in the case appealed. It is doubtful that the commission should have such a record before it until after determination as to the particular charge lodged against the permit holder, then on for hearing, and then only for the purpose of deciding the penalty to be imposed. The board's quasi-judicial character makes the standards of propriety and fairness most important. To attach such documents to the record on appeal opens the door to a prejudicial influence unjustified in even the most unconventional hearing atmosphere.

The trial court sustained the commission in the matter of its rulings on the motions made concerning admission of and confiscation of the evidence taken from the back bar in the permit holder's premises and sustained the decision and order of the commission, holding that the revocation order was predicated upon reliable, probative and substantial evidence in the entire record. Either by inadvertence or design the Court of Common Pleas did not find that the order was also ''in accordance with law,'' as required by Section 119.12, Revised Code

There being no statutory authority for the seizure and confiscation of a permit holder's property, i. e., stock of merchandise, for the purpose of chemical analysis, the exhibits admitted into evidence were not obtained according to law. The attaching of copies of former penalty orders to the record on an appeal is beyond the concept of ''in accordance with law.''

Because of a complete lack of statutory authority for the seizure and confiscation in the instant case, we hold that the seized property may not be admitted into evidence in a hearing before the commission and the admission, therefore, of the department's Exhibits A through G was in error and not in accordance with law.

The judgment of the trial court is reversed, the order of the Liquor Control Commission of Ohio is vacated and the cause is remanded to the commission for further proceeding according to law and this decision.

*Judgment reversed.*

DUFFY, P. J., concurs.

DUFFEY, J., dissenting. I agree with the majority that the Liquor Control Act does not authorize a seizure of property in connection with the mere inspection of a place of business. See Section 4301.10 (6), Revised Code. However, the question is whether the admission of the illegally seized evidence and the testimony was prejudicial error.

The proceedings before the commission are civil and administrative, concerned only with the suspension or revocation of a license to do business. It is not a criminal proceeding and, therefore, not subject to criminal law doctrines. The exclusionary rule applicable to evidence illegally obtained does not apply in such a proceeding. The acts of the agents here may subject them to criminal and civil liability, but they do not operate to warrant the exclusion of evidence which is relevant, competent and material to the issues presented.

I agree also that it was an unfortunate impropriety to attach information on the appellant's previous history to the record. I sincerely hope that the Liquor Board does not review and consider such information prior to making determinations on the merits.