THE STATE OF OHIO *v.* PUTZKE.

[Cite as State v. Putzke, 6 Ohio Misc. 161.]

(Nos. 24138 and 24168—Decided December 6, 1965.)

GAME LAWS PROSECUTION: Port Clinton Municipal Court.

*Mr. William B. Saxbe,* attorney general, and *Mr. Donald A. DeCessna,* for plaintiff.
*Mr. Douglas Meyer,* for defendant.

RUDES, J. This matter came on to be heard on the motion of defendant to suppress evidence, the testimony and evidence relative to the motion.

The record shows that on July 17, 1965, defendant docked in the boat "The Ship A-?" at the Port Clinton Fish Co. dock for the purpose of unloading some fish and getting gas. Defendant had unloaded two boxes of fish and had taken them into the Port Clinton Fish Co. building when he was approached by agents Shaeffer, Biggs and Evans of the Ohio Wildlife Division.

Defendant testified that aboard the ship in addition to some equipment used in trap net fishing, there were twenty-four boxes used for packing and transporting fish, all of which were covered by a tarpaulin.

Following some preliminary conversation between defendant and officer Schaeffer, the gist of which was that Shaeffer inquired if defendant had any luck and defendant answered that he had a few fish, the testimony is at some variance as to what conversation followed.

John Walker, a witness for defendant, stated that Shaeffer asked defendant to search the boat. Defendant testified that Shaeffer said, "I'm going to have a look."

Officer Shaeffer testified that he said that he would like to inspect the fish.

The witnesses were in substantial agreement as to what followed the above conversation. Defendant requested and then apparently insisted several times that the officers obtain a search warrant. Officer Shaeffer then told the defendant that he

did not need a search warrant to inspect the fish, and that anything defendant did to deter the inspection would be violating the law. Defendant, according to his uncontroverted testimony, then said that he would not stop them physically, and the officers boarded the boat and conducted a search or inspection, opening each of the boxes after lifting the tarpaulin covering them.

What occurred after the above incidents is not germane to the matter at hand, as the motion of defendant to suppress any evidence gathered goes only to the alleged unreasonable and unlawful search.

Both the assistant attorney general and counsel for defendant submitted comprehensive briefs in support of their contentions. Nowhere, however, is there cited a case exactly in point under the facts or the law involved here.

The state refers to Section 1533.63, Revised Code, that provides in part: "* * * all fish taken or caught from Ohio waters shall be brought into an Ohio port for inspection * * *." This section is general in nature, and while it provides for bringing fish to an Ohio port for inspection, makes no provision for the manner or method of such inspection. Therefore, it is necessary to look further to determine what the Legislature intended when such a provision was made.

Further, the state contends that since commercial fishing is a regulated business and subject to licensing by the state, the state controls such fishing and anyone choosing to apply for and get licenses for commercial fishing waives his rights and privileges under the Constitution. In the instant case, defendant is licensed to trap net and his boat is licensed for gill netting.

The state draws an analogy between the licensing of the fishing industry and the licensing of the liquor industry, and cites in part *Solomon* v. *Liquor Control Comm.*, 3 Ohio App. 2d 140, by the Franklin County Court of Appeals, decided September 22, 1964. While the analogy between the two licensed industries may or may not be well drawn in general, this court feels that part of the language of the Franklin County Court of Appeals in the *Solomon decision* is pertinent to the case at hand. The court says on page 4 of its opinion:

"Constitutional protections against unreasonable searches and seizures accrue to the private citizen. It is emphasized

again, and by this time it should be abundantly clear, that the permit holder, by becoming such, subjects himself to the operation of the liquor control statutes as enacted by the Legislature for the regulation of the liquor business. Permission to operate within prescribed limits is conferred on the permittee by the State of Ohio and in securing his permit he elects to accept the statutory limitations imposed and waives some of his constitutional rights that might otherwise be asserted as a private citizen. The right of a state to regulate the liquor business is established by amendment to the Federal Constitution and by supporting decisions of the Federal Courts. We look then to the regulating statutes to determine the rights of the permit holder and likewise to determine the area and limits within which enforcement officials, representing the machinery for control established by the state, may operate. Statutes prescribe what they may or may not do.''

Without deciding here that commercial fishing is a regulated industry in the same sense as the liquor industry, whereby licensees waive certain constitutional rights and privileges, it is a certainty that these rights and privileges are not deemed to be waived except as provided by statute, if at all.

The state cites Section 1531.13, Revised Code, as authority for game protectors to make inspections or searches such as the one in the case under consideration. Section 1531.13, Revised Code, says in part:

''They (the officers) may inspect any container or package at any time except when within a building and the owner or person in charge of such building objects. Such inspection shall be only for bag limits of wild animals taken in open season or for wild animals taken during the closed season, or for any kind or species of such wild animals.''

In Section 1531.01 (I), Revised Code, it says: ''Bag Limit means the number of any kind of * * * fish * * * permitted to be taken in a specified time.''

Since this is a criminal statute it must be construed strictly against the state and liberally in favor of the accused. Since there is no bag limit on commercial fish and since there is no allegation that there was a closed season at the time of the alleged offense, this portion of Section 1531.13, Revised Code, is clearly inapplicable.

The only other provision of law brought to the attention of this court purporting to provide for searches by game protectors is next to the last paragraph of Section 1531.13, Revised Code. The pertinent part of said section reads as follows:

"Such game protector, sheriff, deputy sheriff, constable, or officer having a similar authority, may search any place which he has good reason to believe contains a wild animal or any part thereof, taken or had in possession contrary to law or division order, or a boat, gun, net, seine, trap, ferret, or device used in such violation, and seize any he finds so taken or possessed. If the owner or person in charge of the place to be searched refuses to permit such search, upon filing an affidavit in accordance with law with a court having jurisdiction of the offense, and upon receiving a search warrant issued thereon, such officer or game protector may forcibly search the place described and if in such search he finds any wild animal or part thereof * * * in the possession of the owner or person in charge, contrary to Sections 1531.01 to 1531.26, inclusive, and 1533.01 to 1533.69, inclusive, Revised Code, or division order, he shall seize them and arrest the person in whose custody or possession they were found. * * *"

The above quoted section of law, rather than abridging the constitutional rights of the individual, seems to express the intention of the Legislature to protect those rights. Thus the requirement that the officer may search a place "which he has good reason to believe contains a wild animal * * * taken or had in possesion contrary to law or division order." In the instant case there was no evidence to show that the officers had good reason to believe defendant had fish taken or had in possession contrary to law or division order. At the time of the search the officers knew only that defendant had some fish which were taken with a boat duly licensed by the state. Had the intent of the Legislature been to abridge the constitutional privilege against unreasonable search, and to give officers the unlimited right to examine the places mentioned in the statute, then the requirement that they have good reason to believe that animals were possessed contrary to law could have been omitted entirely from the section.

However, further protecting the constitutional rights of the individual, the Legislature spelled out clearly and unequivocally

that if the owner or person in charge of the place to be searched refused to permit such search, then a search warrant would have to be obtained according to law. Certainly the intention of the provision was not to require an actual physical refusal to allow the search, with a resort to violence, if necessary. This thought is abhorent to our concepts of law and order, and would obviously subject anyone, attempting to so prevent a search, to possible prosecution for deterring an officer attempting to do his duty. Here the repeated objections of defendant to the search, and his request and demand that the officers obtain a search warrant, was in fact a refusal to permit such a search, and was as far as he could go with such refusal without resorting to physical actions to prevent it.

In the face of the objections of defendant the officers here were left but one recourse, and that was to seek a search warrant according to law. There has been no Ohio authority cited, nor has this court found any, which holds that commercial fishing is a state-regulated industry analogous to the liquor industry. It is not necessary to decide this question in the case before the court now, for even assuming for the sake of argument that commercial fishing is state-regulated, the language of the Franklin County Court of Appeals in the *Solomon case, supra,* would apply, to wit:

"We look then to the regulating statutes to determine the rights of the permit holder and likewise to determine the area and limits within which enforcement officials, representing the machinery for control established by the state, may operate. Statutes prescribe what they may or may not do."

If, as the court in the above quoted passage avers, even in a regulated industry enforcement officials must operate within the framework of the statutes governing that industry, then certainly the same would apply to the commercial fishing industry, regulated or not, of which the defendant here is a part.

Because of the complete lack of statutory authority for the search conducted in the instant case, the court finds that any and all evidence obtained thereby should be suppressed, excluded and held inadmissible as having been obtained by means of an unlawful, unreasonable and unauthorized search.

*Motion granted.*